NEBRASKA HAY & GRAIN COMPANY, APPELLANT, v. FIRST NATIONAL BANK OF FALLS CITY, APPELLEE.

FILED FEBRUARY 8, 1907. No. 14,669.

Banks: FORGERY: COLLECTION: LIABILITY. A bank that, without notice or suspicion of wrongdoing, receives a draft from the drawer for collection, and demands and obtains payment of it from the drawee, and in good faith pays the proceeds over to its employer, is not liable to the payor in damages because the latter made payment without consideration, and in reliance upon a forged bill of lading which the drawer had attached to and caused to be forwarded with the draft.

APPEAL from the district court for Richardson county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*Reavis & Reavis* and *George A. Magney,* for appellant.

*P. B. Weaver* and *C. Gillespie, contra.*

AMES, C.

The following is a brief statement of the facts alleged in the petition: On the second day of February, 1905, one J. C. Smith made and subscribed, apparently in his own name, a draft upon the plaintiffs, as drawees, for the sum of $900 payable to the order of the defendant bank, an institution doing business in Falls City, in this state. To the draft he attached what purported to be a bill of lading, indorsed in blank by himself, and signed by a station

agent of the Missouri Pacific Railway Company at Reserve, Kansas, of a shipment of corn from the latter point to the plaintiffs at Omaha, Nebraska. The two documents he delivered to the bank, with instructions to forward them for collection to Omaha and to account to him for their proceeds. Reserve is about five miles distant from Falls City. Smith was an utter stranger to the bank officials, who knew nothing about the transaction except what was represented on the face of the papers, which indicated nothing irregular or out of the usual course. They accepted the documents, and indorsed the draft to the Omaha National Bank, or order, for collection, and forwarded them to their correspondent, the latter named bank, for collection and credit, according to the custom of banks in such matters. Under the same date, at Falls City, Smith wrote and sent to the plaintiffs, by mail, a letter, saying: "I ship you today car No. 20,332 Mo. P., loaded 62,300 pounds wheat. See what you can do for me. Have another small car later." On the following day the Omaha bank received the draft and bill of lading, delivered them to and received the amount of the former from the plaintiffs, credited the sum to the account of the defendant and notified the latter of the fact. Without further information or notice, the defendant paid the amount over to Smith, who has not since been seen or heard from by any of the parties. After a delay of several days, the plaintiffs learned that the supposed bill of lading was a forgery and that no grain had been shipped to them as consideration for the draft. Having demanded, and being refused, repayment of the money by the•defendant they brought this action for its recovery. There was a judgment for the defendant upon a demurrer and the plaintiffs appealed.

The petition alleges that the plaintiffs had never previously had any knowledge of or dealings with the man Smith, and that they accepted and paid the draft solely in reliance upon the known respectability and financial responsibility of the defendant, who was named as payee

of the draft, and appeared as if assignee of the purported bill of lading, and had presumably satisfied itself of their genuineness, and the plaintiffs regarded, and were justified in regarding, the transaction as being, in effect, a representation by the defendant that they were genuine. The contention of the plaintiffs is, therefore, that the payment was made through a mistake of facts occasioned solely by the fault or negligence of the defendant, and for which they are themselves in no way responsible. But it is alleged in the petition that the defendant had no interest in the papers or transaction, except as a mere agent of Smith for collection, a fact which the plaintiffs do not deny having known, and which they may well be inferred to have known, at the time of the payment, from the nature of the transaction. The letter written by Smith to the plaintiffs on the day the draft was drawn indicates that the amount of the latter was less than the value of such a quantity of wheat as was named in the bill of lading, and contains a request that the residue or balance be paid by the plaintiffs, by check, to Smith himself at Falls City. This circumstance, if the transaction had been genuine, would have given rise to two inferences: First, that the title to the shipment of corn had not passed to the bank by the indorsement of the bill of lading; and, second, that settlement was not to be made until the shipment had reached the consignees at Omaha, when the latter were requested to "see what you can do for me," that is, we suppose, determine how large a sum they could pay him.

We adopt, without qualification, the contention of counsel for appellant that the principles of the law merchant are without applicability to the case made by the petition, and that the latter is to be decided in accordance with the rules of law governing the relation of principal and agent, and having adopted it there appears to us no doubtful problem for solution. The functions and obligations of a collecting agent, merely as such, do not differ essentially or characteristically from those of a messenger

boy. What may be his moral or social standing or financial responsibility are, so long as he is free from knowledge or participation in any wrongdoing by his principal, matters of no importance. He performs his whole duty by delivering what he is charged with delivering and receiving what he is entrusted to receive, in exchange, and by disposing of the latter as his principal has directed. It is not only not his duty, but it would be an impertinence by him, to inquire into the value, genuineness or validity of either the one article or the other. The case of *First Nat. Bank v. State Bank*, 22 Neb. 769, appears to us not to be in point. In that case the purported check, that is to say, the supposed order upon the Alma bank for the payment of the sum of money in question, was a forgery. In other words, no authority for the collection of the sum existed, and the principle involved is the familiar one that an assumed agent who acts without authority is himself liable as a principal. But in the case at bar the draft was genuine, and the defendant, in demanding and receiving the money and paying it over to the drawer, acted strictly within the scope and limits of its employment. The case of *La Fayette & Bro. v. Merchants Bank*, 73 Ark. 561, 68 L. R. A. 231, recently decided by the supreme court of Arkansas, upon which counsel for appellants seem chiefly to rely, does not appear to us to differ in principle from that just cited. In that case the defendant bank had forwarded and collected a draft, negotiable in form, upon which a purported indorsement by the payee, as well as a purported signature by the payee to an accompanying bill of sale, had been forged, and the defendant was held liable to the drawee to whom it had presented the draft and who had paid it in reliance upon the supposed indorsement and signature. The court discusses at considerable length the facts that the draft purported to have been drawn pursuant to a previous arrangement between the drawer and drawee, according to which it was to have been accompanied by

25

a bill of sale of certain cattle purchased by the drawer from the payee, and that it was apparent upon the face of the papers that the draft was not drawn against funds of the drawer in the hands of the payee, but was to be paid upon the strength and credit of the supposed bill of sale, and decides that the defendant was negligent in purchasing the documents and forwarding them for collection without first having assured itself of their genuineness. Admitting that this opinion is in all respects sound, of which we do not feel at all convinced, it does not appear to us to be decisive of this case, because the defendant was destitute of authority from the payee of the draft, to whose order alone it was payable.

In the case at bar the draft was, as has been already said, genuine. Whether it was signed by the real name of the drawer is not known and is immaterial. It was signed by him by such name as he chose to use, and that fact sufficed to establish his legal relations to it and to the parties with whom he dealt, whatever may have been his true name. The defendant bank was innocent of any notice or of any participation in any wrongful act. The plaintiffs assert and the defendant admits that the defendant assumed simply and solely the functions of a collecting agent. The obligations of such agency it performed promptly and with fidelity, and without guile or suspicion of evil, and by so doing it discharged its whole duty. The business of banking and of collection agencies could not be carried on safely, or at all, if such institutions were held to be liable for the frauds and forgeries of their principals with respect to collateral documents and transactions of which they were ignorant, or if their failure to inquire into and ascertain the genuineness and good faith of such matters was held to be actionable negligence. The plaintiffs were not bound to make payment until they received a satisfactory consideration, nor, even then, unless they had chosen so to do. If, as they allege, they paid a draft drawn by an entire stranger, with whom they had had no previous dealings, and in reliance upon

a spurious bill of sale, without ascertaining the genuineness of the documents and without an inspection and delivery of the grain, their loss is due to their own rashness and negligence, and not to that of the intermediate parties through whom they dealt.

We recommend, therefore, that the judgment of the district court be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.